J-A03014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CRAIG GARDNER | |
| Appellant | No. 179 EDA 2021 |

Appeal from the PCRA Order Entered December 10, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0014238-2013

BEFORE: STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 20, 2022**

Appellant, Craig Gardner, appeals from the December 10, 2020 order dismissing without a hearing his petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. We affirm.

The trial court recited the pertinent facts:

> On September 29, 2013, the complainant received a telephone call from [Appellant] who asked to meet her at 53rd and Race Streets in the City and County of Philadelphia, Pennsylvania to retrieve some of his belongings. The complainant was in a relationship with [Appellant], which produced a child. When the complainant arrived, [Appellant] began to bang on the driver-side car window. When she rolled down the window, [Appellant] punched her on the left side of her face and pulled her out of the car. [Appellant] dragged her into his mother's house and continued to hit the complainant. [Appellant] then dragged her back to the upstairs bedroom. [Appellant] pushed the complainant down on the sofa. [Appellant] forced the complainant to have sexual intercourse. He penetrated her vagina with his penis and ejaculated. After the rape, [Appellant] asked her where her telephone was and punched her in the stomach. After the

complainant put her clothes on, [Appellant] slammed her onto the floor. [Appellant] walked the complainant to her car where she refused to kiss [Appellant]. He then smacked and choked her through the car window. The complainant was eventually able to drive away. She pulled to the side of the road and hit the On Star button in her car to summon the police. Police Officer Terrell Greene arrived at the scene and the complainant reported what happened to the officer.

The complainant was taken to the Special Victims Unit where she gave a statement to Detective Mark Webb and was examined by Geneka Miles, a sexual assault nurse examiner. Ms. Miles took a report from the complainant and performed a physical examination. The nurse testified that there was tenderness of the cervical spine of complainant's neck. Also, there was tenderness of the labia majora and minora, and perineum.

Trial Court Opinion, 4/29/21, at 1-2 (record citations omitted).

At the conclusion of a June 29, 2015 bench trial, the court found Appellant guilty of rape, sexual assault, indecent assault, simple assault, recklessly endangering another person, and false imprisonment.[1] On November 25, 2015, the trial court imposed an aggregate 10 to 20 years of incarceration. This Court affirmed the judgment of sentence on May 15, 2017. The Supreme Court denied allowance of appeal on December 19, 2017.

Appellant filed this timely PCRA petition on April 6, 2018. Appointed counsel, Dino Privitera, filed an amended petition on August 9, 2018. Privitera withdrew with the PCRA court's permission on September 4, 2019. Present counsel, Peter A. Levin, was appointed the same day. On October 6, 2020, the PCRA court filed a Pa.R.Crim.P. 907 notice of intent to dismiss the petition

_____

[1] 18 Pa.C.S.A. § 3121, 3124.1, 3126(a)(1), 2701(a), 2705, and 2903.

- 2 -

without a hearing. The PCRA court dismissed the petition on December 10, 2020. This timely appeal followed.

Appellant presents three questions:

I. Whether the PCRA court erred in not finding trial counsel ineffective for failing to present evidence that trial counsel possessed showing that the complainant had falsely accused another individual of sexual assault on a prior occasion. This would have been used to impeach her testimony.

II. Whether the PCRA court erred in not finding trial counsel ineffective for failing to produce lover letters from the complainant to the Appellant to impeach her testimony.

III. Whether the PCRA court erred in not granting an evidentiary hearing.

Appellant's Brief at 8.

On review of an order dismissing a PCRA petition, we must determine whether the record supports the PCRA courts' findings of fact, and whether the court committed an error of law. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). We review the PCRA court's legal conclusions *de novo.* The decision to grant or deny a hearing rests within the PCRA court's discretion.[2] *Id.* To overcome the presumption of counsel's effectiveness, a PCRA petitioner must plead and prove that (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for the disputed action or inaction; and (3) counsel's failure prejudiced the petitioner to the

---

[2] Rule 907 notice is appropriate where the PCRA court is satisfied that "there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings[.]" Pa.R.Crim.P. 907(1).

- 3 -

extent that there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 618.

Appellant's first argument is that trial counsel was ineffective for failing to present evidence, in the form of recorded prison telephone calls between Appellant and the victim, in which the victim admitted to falsely accusing another person of sexually assaulting her. Attorney Privitera filed a petition to withdraw in which he represented the following:

> [A]fter subpoenaing and/or reviewing hundreds of call logs and recorded prison conversations between [Appellant] and Complainant during [Appellant's] incarceration […] in an effort to uncover exculpatory evidence in support of [Appellant's] PCRA claims. In addition, despite efforts on the part of a private investigator, undersigned counsel was also unsuccessful in locating the complainant (although some family members were contacted) and thus was unable to assess the extent of her willingness to cooperate/testify at an evidentiary hearing.

Motion to Withdraw as Court-Appointed Counsel, 8/20/19, at ¶ 22. The PCRA court permitted Privitera to withdraw and immediately appointed Levin.

In his Pa.R.A.P. 1925(b) statement, Levin acknowledges Privitera's review of the available evidence on this issue but concludes nonetheless that trial counsel has tapes documenting the victim's falsehoods and is lying and refusing to produce them. Statement of Matters Complained of on Appeal, 1/26/21, at ¶ C. Based on this bald assertion that trial counsel is lying, Appellant argues that a hearing was necessary.

We discern no abuse of discretion in the PCRA court's decision not to hold a hearing. Privitera represented to the PCRA court that he subpoenaed

the records of Appellant's recorded phone calls, reviewed them, and found no evidence in support of Appellant's claim. Further, a private investigator was unable to locate the victim to confirm or deny Appellant's account. In summary, the record reflects that the PCRA court declined to hold a hearing on this issue because it was aware of Appellant's inability to produce any evidence of prior false accusations from the victim. Appellant's first argument fails.

Next, Appellant claims trial counsel had no reasonable strategic basis for failing to introduce into evidence the victim's love letters to Appellant. In support of his argument, Appellant cites his Sixth Amendment right to confront the witnesses against him.[3] At trial, the victim testified that Appellant was the father of her three-year-old daughter and she wanted him to come home. N.T. Trial, 6/29/15, at 18-19. The victim was reluctant to answer questions that would incriminate Appellant, and she stated she was there only because the trial court threatened to issue a bench warrant if she did not testify. *Id.* at 20-21, 27. The victim requested Appellant's release:

> Can I talk straight to the Judge, please, because I don't want to talk to her [the prosecutor].
>
> I do remember that night when we had the altercation. I am just saying that as me being the mother of his child, I just want him to come home to be with his daughter. He missed two birthdays with her.

---

[3] "In all criminal prosecutions, the accused shall enjoy the right […] to be confronted with the witnesses against him[.]" U.S. CONST. AMEND. VI.

> And I fill [sic] as though that if you can find in some way to release him so he can be there for his daughter. He missed her two year birthday and her three year just passed.
>
> So I don't mind answering any of the questions, but I'm just saying that after today, I do not want to go forward with this no more.

*Id* at 33-34. Nonetheless, the victim acknowledged that she remembered the assault as she described it to police in a contemporaneous statement. *Id.* at 35-45.

In other words, the victim made clear that she wanted Appellant home from jail. She also testified that Appellant was a "good person." *Id.* at 20. On the other hand, she did not deny that the assault occurred as she described it to police shortly after it happened. Defense counsel cross examined the victim, and therefore he was not denied any right under the confrontation clause. The victim's love letters to Appellant would have, at most, reinforced her testimony that Appellant was a good person and that she did not wish to see him punished with further incarceration. As such, we discern no basis upon which to conclude that the outcome of trial would have been different had trial counsel introduced the love letters. Appellant's second argument fails because he cannot establish prejudice.

Appellant's third argument is simply an assertion that he was entitled to a hearing on the prison phone calls and love letters. Based on our analysis above, we discern no abuse of discretion in the PCRA court's decision not to hold a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/20/2022</u>